Steven GOLDMAN, on behalf of himself and all other similarly situated, Plaintiff,

v.

G.C. BELDEN, Jr., Martin F. Birmingham, Jack C. Corey, Jr., Robert V. Gianniny, Frank M. Hutchins, Alber J. McMullen, Albert J. Montevecchio, Ernest I. Reveal, John R. Sykes, Robert F. Sykes, and Sykes Datatronics, Inc., Defendants.

No. CIV–82–869T.

United States District Court, W.D. New York.

Aug. 11, 1983.

Handelman & Witkowicz, Rochester, N.Y., for plaintiff; Martin S. Handelman, Rochester, N.Y., Bàrrack, Rodos & Bacine, Leonard Barrack and Gerald Rodos, Philadelphia, Pa., Milberg, Weiss, Bershad, Spechtrie & Lerach, New York City, Robert P. Sugarman, New York City, of counsel.

Harter, Secrest & Emery, Rochester, N.Y., for defendants; Kenneth A. Payment, Rochester, N.Y., of counsel.

## DECISION and ORDER

TELESCA, District Judge.

This is an action alleging violations of Section 10(b) of the Securities Exchange Act of 1934 (15 USCA Section 78j(b)) and Rule 10(b)(5) promulgated thereunder (17 C.F.R. 240.10(b)–(5)).[1] In the instant motion, the defendant seeks an order pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure dismissing the complaint for failure to state a claim upon which relief can be granted.[2] The heart of the defendants' attack on the sufficiency of the complaint is their contention that the pleading fails to comply with Federal Rule of Civil Procedure 9(b) which requires allegations of fraud to be pleaded with particularity.

▬▬ Rule 9(b) of the Fed.R.Civ.P. provides, in pertinent part:

In all averments of fraud or mistake, *the circumstances constituting fraud or mistake shall be stated with particularity.* (emphasis added). There exist at least three important purposes for Rule 9(b)'s specificity requirement. The first is to "protect potential defendants from the harm that comes to their reputations when they are charged with the commission of acts involving moral turpitude". *Gross v. Diversified Mortgage Investors (Gross I),* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977). *See also, Segal v. Gordon,* 467 F.2d 602, 607 (2nd Cir.1972). Second, Rule 9(b) serves to ensure that allegations of fraud are concrete and particularized enough to give notice to the defendants of "what conduct is complained of and to prepare a defense to such claim of misconduct". *Rich v. Touche Ross & Co.,* 68 F.R.D. 243, 245 (S.D.N.Y.1975). Finally, and of particular significance in cases such as this involving alleged securi-

---

1. Section 10(b), 15 U.S.C. Section 78j (1970), provides in pertinent part:

   *Section 78j. Manipulative and deceptive devices:*

   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

   (b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

   Rule 10b–5, 17 C.F.R. Section 240.10b–5 promulgated pursuant to Section 10(b) provides:

   It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails, or of any national securities exchange,

   (1) To employ any device, scheme, or artifice to defraud,

   (2) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading, or

   (3) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security.

2. While defendants have captioned the instant motion as a Rule 12(b)(6) motion to dismiss the complaint for failure to plead allegations of fraud with the specificity required by Rule 9(b), both defendants and plaintiff have submitted to the Court documents and exhibits clearly outside the pleadings. Documents tendered to the Court for its consideration included attorney affidavits, party affidavits, retained expert affidavits, annual reports, newspaper articles, and security transaction receipts. Rule 12(b) provides that when matters outside the pleadings are submitted to and not excluded by the Court, the motion to dismiss *shall* be converted into a motion for summary judgment. Any one of the items submitted to me by the parties is sufficient to trigger the conversion of the defendants' dismissal motion into one for summary judgment. *See generally, Fed.Proc.L.Ed.* Section 62:471 *et seq.* Consequently, during oral argument I cautioned counsel for both sides that the submission of documents outside the pleadings for my consideration would compel me to convert the instant motion into one for summary judgment. After due consideration, however, I have decided that the sufficiency of plaintiff's complaint may be determined *without reference* to matters outside the complaint itself. The decision whether to exclude matters outside the pleadings is within the discretion of the trial judge. Accordingly, I decline to convert the defendants' motion into one for summary judgment and have disregarded matters submitted outside the pleadings in determining the sufficiency of plaintiff's complaint.

ties fraud, Rule 9(b) is intended to "inhibit the filing of a complaint as a pretext for discovery of unknown wrongs". *Gross v. Diversified Mortgage Investors, supra* at 1087. As Justice Rehnquist observed in *Blue Chip v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), a securities law "complaint which by objective standards may have very little chance of success at trial has a settlement value to the plaintiff out of any proportion to its prospect of success at trial so long as he may prevent the suit from being resolved against him by dismissal or summary judgment". *Id.* at 740, 95 S.Ct. at 1927. Thus, courts must be wary not to allow a plaintiff with groundless claims the chance to abuse liberal federal discovery rules simply to gain "interrorem" increments in the settlement value of his lawsuit. *Decker v. Massey-Ferguson, Ltd.,* 681 F.2d 111, 114 (2nd Cir.1982). Put another way by Judge Knapp in a strikingly similar lawsuit: "The stark question presented is: Are the facts alleged in the complaint and otherwise known to plaintiff sufficient to justify plaintiff's invocation of the powers of the federal judiciary to compel the defendants to account for all of their corporate activities over the past several years?" *Goldman v. Singer Co.,* 89 F.R.D. 436, 437 (S.D.N.Y.) *aff'd without opinion,* 661 F.2d 908 (2nd Cir.1981).

Before applying these legal principles to the complaint in issue, a brief description of the facts surrounding this lawsuit is appropriate.[3] Plaintiff, Steven Goldman, is a resident of Pennsylvania who purchased 1,000 shares of Sykes Datatronics on August 26, 1982. Incorporated in 1968, defendant Sykes Datatronics, Inc. (hereinafter Sykes), is engaged in the design, manufacture and marketing of micro-computer systems used in information processing and data communications. In the late 1970's Sykes developed and began marketing products having specific application to the telecommunications industry known as the "Comm Storr"

family of terminal attachment products. The Comm Storr products are essentially a family of telephone cost management systems. For example, the Sykes "Inn Voice" system is a computer that assists hotels in recording information about, as well as computing charges for, guest telephone calls. Similarly, Sykes' "Comm Storr/SMDR" (Station Message Detail Recording) product permits businesses to "record statistical information on every call—revealing how much time is spent on calls, who's dialing long distance at odd hours, or who's dialing direct when they should be using WATS." (Sykes 1982 Annual Report at p. 5).

The immediate success of Sykes' new product line generated an unprecedented period of growth in both sales and earnings. Since 1978 Sykes' reported earnings have more than doubled each year. The introduction of the Comm Storr line of products in 1977 also heralded a significant, if not spectacular, rise in the market price of Sykes' stock. In 1980, Sykes declared stock splits of 3 for 2 and 2 for 1. In 1981, Sykes declared a 3 for 1 stock split. Thus, a shareholder of 1 share of Sykes' stock in February, 1980 owned 9 shares in June, 1981.

Because the Comm Storr product line was marketed primarily through Bell Telephone Companies, Sykes became increasingly dependent upon sales to American Telephone & Telegraph Company (AT & T). In fact, during the 1982 fiscal year, Sykes' sales to AT & T amounted to almost 80% of Sykes' total sales. No other customer accounted for more than 10% of Sykes' net sales.

It is apparent from Sykes' public statements and reports issued during the first half of 1982 that management held an optimistic view of Sykes' future prospects. The annual report for 1982, issued May 7, 1982, contained a letter to shareholders from defendants Robert F. Sykes and G.C. Belden, Jr., which stated that "we expect a year of

---

**3.** The allegations of fact contained in the complaint are accepted as true for the purposes of this motion. Because several of plaintiff's allegations of wrongdoing center upon Sykes' An-

nual Report, I may properly refer to its contents. *Decker v. Massey-Ferguson,* 681 F.2d 111, 113 (2nd Cir.1982).

strong growth in sales and earnings although at a pace less than the annual doubling rate of the three prior years". At the annual meeting of shareholders held June 16, 1982, defendant Robert Sykes stated, in response to a shareholder's question concerning Sykes' future, that "our growth [rate] is definitely not targeted or aimed at doubling but we are certainly going to try to be doing something in the order of 40 or 50% or better". While Sykes was certainly aware that its largest customer, AT & T, was involved in complex anti-trust settlement negotiations that contemplated substantial divestiture of Bell operating companies, Sykes nonetheless believed that the proposed "break up" of Bell presented "increasing opportunities for Sykes". (1982 Annual Report at p. 1).

Of course the instant lawsuit pays tribute to the fact that "the anticipated surge in business failed to materialize". (Defendants' Memorandum of Law at p. 6). On August 30, 1982, Sykes' President, C.G. Belden, Jr., issued a press release which stated that "unsettled conditions in the telecommunications market served by Sykes has slowed the expected sales growth of recently introduced products. Sales for the fiscal year ending February 28, 1983 are expected to be around 50 million dollars with earnings materially less than the previous year". Plaintiff claims that the August 31st announcement "caused" the market price of Sykes' common stock to drop from $13.00 per share to $7.75 per share, a decrease of approximately 45%.

On September 24, 1982, plaintiff commenced the instant action, naming as defendants Sykes Datatronics along with 10 individual members of Sykes' Board of Directors. The gist of plaintiff's complaint is that the defendants violated federal securities law by disseminating false and misleading information about Sykes as well as withholding or omitting material information from the company's Annual Reports, press releases and quarterly statements. The result, according to plaintiff, was an inflated market price for the company's common stock, which several of the defendants took advantage of by selling "substan-

tial" shares of stock prior to the August 31st revelation of lower than expected growth. As in *Goldman v. Singer, supra,* plaintiff does not appear to claim that any of the facts regarding Sykes' *past* performance to be untrue. Rather, plaintiff "simply contends that the reports were materially false in *failing to make timely forecasts of future difficulties*". *Id.* at 438 (emphasis added). The Second Circuit has long insisted that a complaint alleging fraudulent violations of Section 10(b) and Rule 10(b)(5) satisfy the particularity requirement of Fed.R.Civ.P. 9(b). As Judge Van Graafeiland reiterated in a recent case: "To pass muster in this Circuit a complaint must allege with some specificity the acts constituting the fraud; (citations omitted), conclusory allegations that defendants' conduct was fraudulent or deceptive are not enough". *Decker v. Massey-Ferguson, Ltd., supra* at 114. After careful consideration, I find that plaintiff's complaint fails to meet the requirements of Rule 9(b) in several significant respects.

1. *Particularity with respect to the alleged fraudulent statements or omissions.*

Paragraph 31 of the complaint endeavors to define the "misleading statements and documents" for which plaintiff seeks to hold defendants liable. While five alleged fraudulent statements are listed with particularity in paragraph 41, the plaintiff is also careful not to limit himself to those five.

■ Instead, plaintiff alleges that the misleading statements and documents "*include but [are] not limited to*" those alleged with particularity, (emphasis added). This is clearly improper. There must be specific identification of the alleged inaccurate statements. Plaintiff must identify when each misleading statement was made and which of the defendants was responsible for its issuance. *See Todd v. Oppenheimer and Co.,* 78 F.R.D. 415, 420 (S.D.N.Y.1978); *Elster v. Alexander,* 75 F.R.D. 458, 461 (N.D. Ca.1977). In the instant case, either plaintiff knows of misleading statements made

738

by the defendants or he does not. If he does, then he must allege each and every statement with particularity. If he does not, then he may not use federal discovery procedures to flush statements out. A complaint alleging fraud "should serve to redress a wrong, not to find one". *Segal v. Gordon,* 467 F.2d 602, 608 (2nd Cir.1972).

2. *Particularity with respect to the factual basis behind plaintiff's claim that statements were false or misleading.*

■ Simply denominating the transgressing documents or statements as "false", "misleading", or "inaccurate" does not give defendants adequate notice of the charges against them. "There must be allegations of facts amounting to deception in one form or another" to satisfy the requirements of Rule 9(b). *Segal v. Gordon, supra,* at 607. The complaint must "specify in what respects *each of the statements* were false or misleading, and the *factual basis* for believing the defendant acted fraudulently and was responsible". *Todd v. Oppenheimer & Co.,* 78 F.R.D. 415, 420 (S.D.N.Y.1978) quoting *Gross v. Diversified Mortgage Investors (Gross II),* 438 F.Supp. 190, 195 (S.D.N.Y. 1977). While plaintiff need not plead his evidence, *Schlick v. Penn-Dixie Cement Corp.,* 507 F.2d 374 (2nd Cir.1974), "[a]t the very least, [he] must disclose those facts that have led him to believe the defendants' publications are false". *Denny v. Barber,* 73 F.R.D. 6, 9 (S.D.N.Y.1976), *aff'd.* 576 F.2d 465 (2nd Cir.1978).[4]

■ The instant complaint is devoid of any objective facts which would suggest that any of the statements, or reports issued by defendants were recklessly made or any opinion expressed was not honestly held. The attempt by plaintiff in paragraph 35 of his complaint to specify why

the statements "referred to in paragraph 31 were false or misleading" is clearly insufficient. Instead of identifying with particularity the facts or factors that each defendant knew or should have known when issuing the alleged fraudulent statements and reports, the complaint contains conclusory allegations that "in light of the defendants' ready access to pertinent business and financial data of Sykes" (complaint, para. 35(a)) and due to the fact that Sykes "intentionally created the impression that they were aware of market conditions affecting their business" (complaint, para. 35(b)), the statements issued by the defendants "were made without any adequate basis and were false and misleading". (complaint, para. 35(c)). These general, unspecified claims do not meet the spirit nor the letter of Rule 9(b). Allegations that various defendants were in possession of all the material and pertinent facts with respect to a company's operations and finances and were thereafter recklessly indifferent to the fact that certain documents named in the complaint were false and misleading "fail to furnish the required factual predicate for allegations of fraud and deception". *Decker v. Massey-Ferguson, supra* at 120. As Judge Friendly stated in *Denny v. Barber:* "[t]here must be more than vague allegations that, as shown by subsequent developments, the corporation's true financial picture was not so bright in some respects as its annual reports had painted and that the defendants knew, or were reckless in failing to know this". 576 F.2d at 470. The complaint, in order to survive a motion to dismiss, must identify with particularity exactly what it is that defendants knew and failed to consider in making the allegedly misleading or inaccurate statements. That is the essence of fraud. Simply because the defendants' predictions as to the future

---

4. *See also Ross v. A.H. Robins Co.,* 607 F.2d 545, 558 (2nd Cir.1979) wherein the Court stated:

[A]t this stage of the litigation, we cannot realistically expect plaintiffs to be able to plead defendants' actual knowledge. On the other hand, plaintiffs can be required to supply a factual basis for their conclusory allegations regarding that knowledge. It is reason-

able to require that plaintiffs specifically plead those events which they assert give rise to a strong inference that the defendants had knowledge of the facts contained ... in the complaint or recklessly disregarded their existence. And, of course, plaintiff must fix the time when these particular events occurred.

growth of Sykes failed to materialize does not indicate that the statements were untrue at the time they were made. "[T]he mere occurrence of unpredicted disaster is an insufficient basis on which to predict a charge of recklessness or fraud against a corporate director." *Goldman v. Singer, supra* at 439–440.

In sum, I am in agreement with Judge Van Graafeiland's conclusion in dismissing a similar complaint: "Economic prognostication, though faulty, *does not, without more,* amount to fraud. It is the 'more' that Section 9(b) requires and is lacking in plaintiff's complaint." *Decker v. Massey-Ferguson, supra* at 117. (emphasis supplied) (citations omitted).

3. *Particularity with respect to each defendant's participation in the alleged fraud.*

■ When a plaintiff sues ten individual defendants, accusing each of them of fraud, as plaintiff has done here, he has an obligation under the Rules of Civil Procedure to allege with particularity the specific fraud perpetrated by each defendant. *Natowitz v. Mehlman,* 542 F.Supp. 674, 676 (S.D.N.Y. 1982). "[E]ach defendant named in the complaint is entitled to be apprised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Jacobson v. Peat, Marwick, Mitchell & Co.,* 445 F.Supp. 518, 522 n. 7 (S.D.N.Y.1977).

■ The instant complaint fails miserably in meeting this requirement. Its inadequacy is probably best illustrated by citing an example. Paragraphs 39 and 40 of the complaint allege:

39. In connection with and in furtherance of the aforesaid fraudulent combination and conspiracy, the defendants' each aiding and abetting the others, engaged in the acts and conduct by which they combined, conspired and agreed to do as aforesaid, and each of the defendants has acquiesced, encouraged, cooperated and assisted in the effectuation of such combination and conspiracy as hereinbefore set forth.

40. Each of the defendants, by acting as hereinbefore described did so knowingly and/or in such a reckless manner as to constitute a willful deceit and fraud upon plaintiff and the members of the class.

Allegations such as these, based upon blanket reference to "all defendants" add absolutely nothing to plaintiff's statement of claim and frustrate the clear purpose of Rule 9(b).

The allegations in paragraph 36 of the complaint, purporting to detail how "the defendants" acquired "actual knowledge of the false and misleading nature of the statements" they allegedly issued, are similarly defective. Unadorned allegations that the defendants "participated in preparing, reviewing and issuing" false and misleading reports and statements do not satisfy the strictures of Rule 9(b). *Morgan v. Prudential Group,* 81 F.R.D. 418, 425 (S.D.N.Y. 1978).

At a minimum, the complaint must include the following: (1) the nature of each individual defendant's participation in the fraud, including the facts constituting scienter and an explanation of the defendant's duty toward the plaintiff; (2) whether the defendant is being sued as a primary defendant or as an aider and abettor; and (3) as to allegations on information and belief, a statement of the source of the information and the reasons upon which the belief is founded.

*Goldberg v. Meridor,* 81 F.R.D. 105, 111 (S.D.N.Y.1979). The complaint before me does not meet these minimum requirements. The general allegations such as those contained in paragraph 36 of the complaint, have been described by the Second Circuit as "so broad and conclusory as to be meaningless". *Decker v. Massey-Ferguson, supra* at 120.

In sum, the allegations in the complaint before me generally fail to differentiate among the individual defendants in terms

of their culpable conduct.[5] Accordingly, the complaint does not meet the requirements of Rule 9(b).

## CONCLUSION

 The defects identified in plaintiff's complaint are not simply a matter of this Court placing form over substance. A complaint serves to frame the issues in any lawsuit. The requirement in Rule 9(b) that allegations of fraud be pleaded with particularity serves several important purposes, not the least of which is to mark off the boundary lines with respect to what will be deemed "relevant" for purposes of permissible discovery. Before this Court will issue a judicial search warrant allowing plaintiff access to every detail of defendants' business activities the *complaint itself* must demonstrate that "probable cause" exists to believe that fraud has been committed by each defendant. The complaint, as drafted, fails to meet this standard.

The claims of wrongdoing and fraud found in this complaint are serious accusations, both to this Court, and of course to the defendants. I am well aware that liability may be (and should be) imposed "where management intentionally fosters a mistaken belief concerning a material fact, such as its evaluation of the company's progress and earnings prospects in the current year.", *Elkind v. Liggett & Myers, Inc.*, 635 F.2d 156, 164 (2nd Cir.1980), particularly where, as is charged in this complaint, the fraud is committed so as to allow those possessing "accurate" information to sell off personal shareholdings at an inflated price. But accusations such as those found in this complaint may not be made in a factual vacuum either. Rule 9(b) also serves to protect defendants from the harm that comes to their personal and business reputations when faced with unsupported and thus irresponsible allegations of fraud. As the Second Circuit observed in *Segal v. Gordon:*

"It is a serious matter to charge a person with fraud and hence no one is permitted to do so unless he is in a position and is willing to go on the record as to what the alleged fraud consists of specifically." 467 F.2d at 607.

Accordingly, and for the reasons discussed in detail above, plaintiff's complaint is dismissed against all defendants, without prejudice to plaintiff's filing an amended complaint that satisfies the requirements of Rule 9(b) within thirty (30) days of the filing of this Order.

SO ORDERED.

---

5. The only exceptions in the complaint are: (1) statements specifically attributed to defendants, G.C. Belden and Robert F. Sykes, and (2) the stock sales alleged in paragraph 37 of the complaint.