Christopher J. PETERSON

v.

PHILADELPHIA STOCK EXCHANGE, Murray L. Ross, Esq., and Bear Stearns & Co., Inc.

Civ. A. No. 89–0925.

United States District Court, E.D. Pennsylvania.

July 28, 1989.

Phyllis Horn Epstein, Philadelphia, Pa., for plaintiff.

Barry F. Schwartz, Wolf, Block, Schorr et al., Philadelphia, Pa., Gary L. Leshko, for defendants.

Diana S. Donaldson, Schnader, Harrison, Segal & Lewis, Philadelphia, Pa., for Philadelphia Stock Exchange, Murray L. Ross.

## MEMORANDUM–ORDER

CLIFFORD SCOTT GREEN, District Judge.

Presently before me are Philadelphia Stock Exchange (the "Exchange" or "PHLX") and Murray L. Ross's Motion To Dismiss The Amended Complaint, Bear Stearns & Co., Inc.'s ("Bear Stearns") Motion To Dismiss The Amended Complaint, and various responses thereto. For the following reasons, the Motions will be granted, in part, and denied, in part.

BACKGROUND [1]

The plaintiff, Christopher J. Peterson, is a former officer and employee of Lakshmi Securities Corporation ("Lakshmi"). In 1987, Lakshmi became insolvent and indebted to PHLX, in the amount of $18,-507.27, and to Bear Stearns for $7,437,-257.00. In an attempt to collect on its debt, Bear Stearns attached Mr. Peterson's personal assets, and filed arbitration actions with PHLX and the Chicago Board Options Exchange ("CBOE").

In 1988, Mr. Peterson sought membership in PHLX in order to secure employment with Setsudo Securities Corporation, an Exchange member. At that time, PHLX, and its employee, Murray L. Ross, informed Mr. Peterson that, under the Exchange's rules, he could not become a member of PHLX unless he satisfied the claims of all Lakshmi creditors. Allegedly, Mr. Ross and Bear Stearns told Mr. Peterson, and others in the investment community, that Mr. Peterson would never work again on the Exchange. That Fall, Mr. Peterson was denied membership by the PHLX Admissions Committee. Mr. Peterson appealed this decision to the PHLX Board of Governors.

Soon thereafter, Mr. Peterson commenced this action against the defendants. In Count I of the Amended Complaint, Mr. Peterson asserts that the defendants have engaged in an illegal conspiracy in the restraint of trade under 15 U.S.C. §§ 1, and seeks remedies under the Clayton Act, 15 U.S.C. §§ 15, 26. Count II asserts defamation claims against Bear Stearns, and Mr. Ross. Mr. Peterson also claims that all of the defendants tortiously interfered with his contractual and business relationships

---

1. The background facts are based on the allegations in the Amended Complaint. *See Scheuer v. Rhodes,* 416 U.S. 232, 235, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

in Count III of the Amended Complaint. In Count IV, the plaintiff alleges that the defendants acted in violation of the Hobbs Act, 18 U.S.C. § 1951. The Amended Complaint also asserts claims against the defendants based on the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1961–1968. Finally, the plaintiff asks this court to enjoin the defendants from "continuing, maintaining or renewing the combination, conspiracy and/or agreement," and for an order "admitt[ing] [him] to membership with the PHLX." Amended Complaint, ¶ (C). These requests are based on 18 U.S.C. § 1964, and 15 U.S.C. § 26.[2]

DISCUSSION

## I.

The defendants move to dismiss the Amended Complaint, pursuant to Fed.R. Civ.P. 12(b)(6), for failure to state a claim. Such dismissal is appropriate only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–6, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). In making this determination, the court must accept all factual allegations of the complaint as true, and draw all reasonable inferences in favor of the non-moving party. *See* 2A G. Grotheer, Jr., J.D. Lucas, & J. Moore, Moore's Federal Practice, ¶ 12.07[2.–5] (2d ed. 1985). With this in mind, I turn to the defendants' motions.

*Count I*

In Count I, Mr. Peterson asserts that the defendants' conspiratorial actions "constitute unreasonable restraints upon interstate trade and commerce so as to have prevented Plaintiff from carrying on a business on the PHLX or the CBOE,"

Amended Complaint, ¶ 20, in violation of the Sherman Anti–Trust Act, 15 U.S.C. § 1. Accordingly, Mr. Peterson seeks damages and injunctive relief under the Clayton Act, 15 U.S.C. §§ 15, 26. For different reasons, the defendants assert that the Amended Complaint fails to state a claim under § 1.

### BEAR STEARNS

■ Bear Stearns attacks the Amended Complaint by arguing that Mr. Peterson fails to allege sufficient facts to support his anti-trust claims. Under § 1 of the Sherman Anti–Trust Act, "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal."

In this Circuit:

[t]o establish a civil cause of action under Section 1 [of the Sherman Anti–Trust Act], a plaintiff must prove four elements:

(1) that the defendants contracted, combined or conspired among each other; (2) that the combination or conspiracy produced adverse, anti-competitive effects within the relevant product and geographic markets; (3) that the objects of and the conduct pursuant to that contract or conspiracy were illegal; and (4) that the plaintiffs were injured as a proximate result of that conspiracy.

*Arnold Pontiac–GMC, Inc. v. General Motors Corp.*, 786 F.2d 564, 572 (3d Cir.1986) (citations omitted).

In viewing all of the allegations of the Amended Complaint as true, I find that Mr. Peterson does allege facts to support the conspiracy[3], illegal conduct[4], and injury[5]

---

**2.** *See* Response Of Plaintiff Christopher J. Peterson In Opposition To The Motion To Dismiss Amended Complaint Filed By Philadelphia Stock Exchange And Murray L. Ross, Esq., p. 6.

**3.** Mr. Peterson asserts that "Plaintiff was advised by Ross and PHLX, that he would be denied membership by the Admissions Committee unless he fully satisfied the claims of all Lakshmi creditors including ... Bear Stearns." Amended Complaint, ¶ 10. This allegation, combined with the assertion that Mr. Ross, and Bear Stearns, "have stated to Plaintiff and oth-

ers in the public that Plaintiff would never work again in any capacity on the [Exchange]," Amended Complaint, ¶ 16, permits an inference of concerted conduct between PHLX and Bear Stearns.

**4.** The defendants' "object and conduct" could be deemed illegal under § 1 of the Sherman Anti–Trust Act: Mr. Peterson alleges that the defendants "entered into a secret combination and conspiracy ... [and acted] to ruin and destroy

elements of his section 1 claim. Moreover, Mr. Peterson has alleged facts from which this court can infer that the defendants' conduct constitutes a *per se* violation of section 1[6] had an adverse effect on the market[7]. *See generally* Amended Complaint, ¶¶ 1–21.

Viewing the Amended Complaint liberally, Mr. Peterson is a person who has been, or shall be, injured by an anti-trust violation. Thus, his claims for relief, under sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a), 26, do not warrant dismissal. Essentially, dismissal of the § 1 claim, at this stage of litigation, would be premature. *See Hospital Building Co. v. Trustees of the Rex Hospital*, 425 U.S. 738, 746–47, 96 S.Ct. 1848, 1853, 48 L.Ed.2d 338 (1976) ("In antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' ... dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly."). Accordingly, Bear Stearns' Motion to Dismiss Count I must be denied.

### THE EXCHANGE

■ PHLX and Mr. Ross move for dismissal based on the argument that the Exchange is immune from the anti-trust laws. Without question, immunity will be implied "where there is a 'plain repugnancy between the antitrust and regulatory provisions.'" *Gordon v. New York Stock Exchange*, 422 U.S. 659, 682, 95 S.Ct. 2598, 2611, 45 L.Ed.2d 463 (1975) (citations omitted). *See also Winkleman v. New York Stock Exchange*, 445 F.2d 786, 789 (3d Cir. 1971). That is not the situation here.

In viewing the facts in the Amended Complaint as true, and drawing all reasonable inferences in favor of the plaintiff, Mr. Peterson is not complaining about PHLX's adherence to its rules, but about its conspiracy to blacklist him from the securities market. This alleged conduct is outside agency regulation. Thus, the doctrine of "implied repeal" is inapplicable. *See Gordon v. New York Stock Exchange*, 422 U.S. at 686–89, 95 S.Ct. at 2613–14. PHLX's 12(b)(6) Motion will therefore be denied.

*Count IV*

■ In Count IV of the Amended Complaint, Mr. Peterson sets forth a civil claim for treble damages based on the Hobbs Act, 18 U.S.C. § 1951. The defendants assert, without opposition from the plaintiff, that the Hobbs Act provides no implicit civil remedy. I agree.

Under the Hobbs Act,

[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be fined not more than $10,000 or imprisoned not more than twenty years or both.

18 U.S.C. § 1951(a).

As the Supreme Court has held, a private cause of action may be implied from a criminal statute, *see Cort v. Ash*, 422 U.S.

---

the business and reputation of Christopher J. Peterson and to deprive him the opportunity to practice in his chosen profession of market trading for which he was trained and qualified." Amended Complaint, ¶ 19.

5. Mr. Peterson pleads his "injury" in ¶ 19, and ¶ 21 of the Amended Complaint.

6. As the Supreme Court has stated "agreements whose nature and necessary effect are so plainly anticompetitive ... no elaborate study of the industry is needed to establish their illegality— they are 'illegal *per se.*'" *National Society of Professional Engineers v. United States*, 435 U.S. 679, 692, 98 S.Ct. 1355, 1365, 55 L.Ed.2d 637 (1978). The Third Circuit has held that boycotts which are conducted "to exclude a person or

group from the market, or to accomplish some other anti-competitive objective, or both," *DeFilippo v. Ford Motor Co.*, 516 F.2d 1313, 1318 (3d Cir.) (citations omitted), *cert. denied*, 423 U.S. 912, 96 S.Ct. 216, 46 L.Ed.2d 141 (1975), are *per se* violations of § 1. The plaintiff's allegations, when taken as true, could constitute a *per se* violation.

7. When most liberally viewed, the Amended Complaint suggests that the defendants conspired to "blacklist" the plaintiff from the securities market. In *Radovich v. National Football League*, 352 U.S. 445, 77 S.Ct. 390, 1 L.Ed.2d 456 (1957), the Supreme Court recognized that "blacklisting" could, in some circumstances, have an adverse effect on the market so to warrant protection by the anti-trust laws.

66, 95 S.Ct. 2080, 45 L.Ed.2d 26 (1975), where there is a factual basis for believing that Congress so intended. *See Middlesex County Sewerage Authority v. National Sea Clammers Assoc.*, 453 U.S. 1, 13, 101 S.Ct. 2615, 2622, 69 L.Ed.2d 435 (1981). This court must first look to the language of the statute, and then to the legislative history in order to assess Congressional intent. 453 U.S. at 13, 101 S.Ct. at 2623.

The Hobbs Act contains no language which suggests it can provide civil relief. Moreover, this court cannot find congressional concern for civil relief in the legislative history. *See* 78 Cong.Rec. 448–60, 5735, 11402–03, 11482 (1934); H.R.Rep. No. 238, 79th Cong., 2d Sess., 1360–70 (1946). "In the absence of strong indicia of a contrary congressional intent, [I am] compelled to conclude that Congress provided precisely the remedies it considered appropriate." *Middlesex County Sewerage Authority v. National Sea Clammers*, 453 U.S. at 15, 101 S.Ct. at 2623. Since the Hobbs Act only provides for criminal sanctions,[8] Count IV fails to state a civil claim for relief.

*Count V*

In Count V of the Amended Complaint, Mr. Peterson alleges that the defendants acted in violation of sections (c), and (d) of the Racketeer Influenced and Corrupt Organization Act, 18 U.S.C. §§ 1962(c), (d) ("RICO"). Section 1962(c) prohibits:

> any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.

18 U.S.C. § 1962(c). Subsection (d) prohibits conspiring to violate subsection (c). Since the plaintiff has not alleged facts that could constitute a "pattern of racketeering activity," the Amended Complaint fails to state a claim under both provisions.[9]

Mr. Peterson alleges that the defendants' conduct constitutes extortion which is indictable under the Hobbs Act, 18 U.S.C. § 1951, and is thus, a "racketeering activity" within the meaning of 18 U.S.C. § 1961. The allegations, in the Amended Complaint, do not support such a finding.

■ Under the Hobbs Act, "[t]he term 'extortion' means the obtaining of property from another, with his consent, induced by *wrongful use* of actual or threatened force, violence, or fear, or under color of official right." 18 U.S.C. § 1951(b)(2) (emphasis added). The ordinary resort to legal process does not rise to the level of a "wrongful use" of force or fear. *United States v. Enmons*, 410 U.S. 396, 400, 93 S.Ct. 1007, 1009–10, 35 L.Ed.2d 379 (1973).

■ In ¶ 33 of the Amended Complaint, Mr. Peterson alleges that:

> [b]y virtue of the acts described in this complaint the defendants were joined actively and as conspirators in a plan to obtain millions of dollars from Plaintiff under threat and exercise of personal economic ruin affecting interstate commerce by refusing him membership on the PHLX and by filing false claims with the PHLX and CBOE.

PHLX's membership procedures, to which Mr. Peterson availed himself, and Bear Stearns' attachment and arbitration actions are legal proceedings, and not "wrongful" within the meaning of § 1951(b)(2). Thus, Mr. Peterson's reliance on the Hobbs Act, as a predicate racketeering activity, is misplaced.

■ Moreover, Mr. Peterson has failed to allege facts that could constitute a "pattern." The Supreme Court explained in *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 n. 14, 105 S.Ct. 3275, 3285 n. 14, 87 L.Ed.2d 346 (1985), that a "pattern" is evidenced by the "continuity plus relationship" of the racketeering activities. The Third Circuit has held that "continuity" must be determined by the circumstances

---

**8.** Another district court reached this same conclusion. *See Creech v. Federal Land Bank Of Wichita*, 647 F.Supp. 1097, 1099 (D.Colo.1986).

**9.** Since I have reached this conclusion, I have no occasion to determine the sufficiency of the plaintiff's allegations as to the other elements of his RICO claim.

of the particular case. *See Barticheck v. Fidelity Union Bank/First National State,* 832 F.2d 36, 39 (3d Cir.1987). This court must consider:

> a combination of specific factors such as the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity.

*Id.* (Citations omitted.)

In this case, Mr. Peterson is the sole victim of the alleged extortion scheme. *See* Amended Complaint ¶ 41. Moreover, only two active perpetrators are present here: PHLX, and Bear Stearns. *See* Amended Complaint, ¶¶ 37, 38. Finally, the alleged unlawful acts are limited and occurred over the course of a few months. *See* Amended Complaint, ¶¶ 1–41. As the Third Circuit stated, when it was faced with two active perpetrators involved in a short-lived scheme which caused a single injury to a sole victim: "this is not criminal activity with the kind of continuity of which we spoke in *Barticheck.*" *Marshall–Silver Construction Co., Inc. v. Mendel,* 835 F.2d 63, 67 (3d Cir.1987). *See also H.J. Inc., et al. v. Northwestern Bell Telephone Co, et al.,* — U.S. ——, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989). Accordingly, Count V must be dismissed.[10]

## II.

 In the conclusions of his opposing briefs, Mr. Peterson asks for leave to amend his Amended Complaint as an alternative to dismissal. Considering this request as a motion for leave to amend, *see* Fed.R.Civ.P. 7(b); Local Rule 20, the motion will be denied.

Under Fed.R.Civ.P. 15(a), leave to amend a pleading "shall be freely given when justice so requires." A court may properly deny such leave when amendment would be futile. *See Foman v. Davis,* 371 U.S. 178,

182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Massarsky v. General Motors Corp.,* 706 F.2d 111, 125 (3d Cir.), *cert. denied,* 464 U.S. 937, 104 S.Ct. 348, 78 L.Ed.2d 314 (1983). Mr. Peterson has pled, with specificity, the conduct relied upon for his Hobbs Act and RICO claims. Since I have determined that the alleged conduct is legally insufficient to state a claim under either statute, amendment would be futile. Thus, Mr. Peterson's request for leave to amend shall be denied.

## III.

 In Counts II and III of the Amended Complaint, Mr. Peterson asserts state law claims against the defendants. The defendants move for their dismissal under the teachings of *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). Since this court has not dismissed Mr. Peterson's Anti–Trust claim, this court has pendent jurisdiction over these state law claims. Thus, the motions will be denied.

## CONCLUSION

Insofar as the defendants' 12(b)(6) Motions seek dismissal of Count I, the motion shall be denied: the Amended Complaint does state a claim for relief under the anti-trust laws. Since this court has subject matter jurisdiction over this matter, by virtue of this federal claim, I will not dismiss Mr. Peterson's state law claims. The Amended Complaint does fail, however, to state cognizable claims based on the Hobbs Act and RICO. Thus, the defendants' motions will be granted as to Counts IV and V. Mr. Peterson's motion to amend these claims will be denied.

---

**10.** Since the plaintiff has failed to show a violation of § 1962, he is not entitled to injunctive relief under 18 U.S.C. § 1964(a).