## AIRLINES REPORTING CORPORATION, Plaintiff,

v.

## AERO VOYAGERS, INC., Gurmet Singh and Anupam K. Sharma, Defendants.

### No. 89 Civ. 0808 (RWS).

United States District Court, S.D. New York.

Sept. 19, 1989.

---

Richard A. Cooter, Alexandria, Va., Coffinas, Coffinas & Zahakos, Brooklyn, N.Y. by George G. Coffinas, of counsel, for plaintiff.

Slatt and Lane, New York City by Abner P. Slatt, of counsel, for defendants.

## OPINION

SWEET, District Judge.

Defendants Aero Voyagers, Inc. ("Aero"), Gurmet Singh ("Singh"), and Anupam K. Sharma ("Sharma") (collectively, the "Defendants") have moved pursuant to Rules 12(b)(6) and 9(b), Fed.R.Civ.P., for an

order dismissing the complaint's claims for fraud, violations of the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq.* (1982 & Supp. IV 1986), negligence, and punitive damages and pursuant to Rule 11, Fed.R. Civ.P., for sanctions. For the reasons set forth below, the motion to dismiss is granted in part and the motion for sanctions is denied.

*The Parties*

Plaintiff Airlines Reporting Corporation ("ARC"), a Delaware corporation maintaining its principal place of business in Washington, D.C., is the assignee of all claims Air Traffic Conference of America ("ATCA") has against the Defendants. ARC and ATCA serve as agents for various air carriers, providing services "relating to the control, distribution and processing of airline tickets, to the maintenance of a list of eligible recipients of such tickets, and to the processing and settlement of airline ticket transactions." Complaint ¶ 1.

Aero is a New York corporation with its principal place of business—a travel agency—located in New York City. Singh is a New Jersey citizen, and Sharma is a New York citizen. Both Singh and Sharma serve as officers and directors of Aero.

*The Facts*

In June 1984, Aero and ATCA entered a contract that authorized Aero to order airline tickets from ATCA and sell those tickets to the general public. The contract required Aero on a weekly basis to report to and pay ATCA for all airline tickets Aero had sold the preceding week. It also required Aero to hold all funds and credit card billings, less applicable commissions, in trust for ATCA until Aero paid those monies to ATCA.

According to the complaint, Aero failed to report or pay for $75,334.95 worth of airline tickets sold from November 1986 through December 1987. The complaint alleges that the Defendants used that money for their own purposes, although ATCA and ARC repeatedly demanded payment.

*Prior Proceedings*

On February 3, 1989, ARC sued the Defendants for breach of contract, breach of fiduciary duty, conversion, RICO violations, fraud, and negligence seeking compensatory and punitive damages. On May 9, 1989, the Defendants moved for an order dismissing the claims for fraud, RICO violations, negligence, and punitive damages and sanctioning ARC under Rule 11. Oral argument was heard, and the motion was considered fully submitted on May 19, 1989.

*Discussion*

*A. Motion to Dismiss*

*Standard for a Motion to Dismiss*

A court should dismiss a complaint for failure to state a claim under Rule 12(b)(6), Fed.R.Civ.P., only if it appears beyond doubt that the plaintiff can prove no set of facts supporting its claim that entitles it to relief. *See H.J. Inc. v. Northwestern Bell Tel. Co.,* —— U.S. ——, 109 S.Ct. 2893, 2906, 106 L.Ed.2d 195 (1989); *Hishon v. King & Spalding,* 467 U.S. 69, 73, 104 S.Ct. 2229, 2232–33, 81 L.Ed.2d 59 (1984); *Dahlberg v. Becker,* 748 F.2d 85, 88 (2d Cir. 1984), *cert. denied,* 470 U.S. 1084, 105 S.Ct. 1845, 85 L.Ed.2d 144 (1985). A court must construe the complaint's allegations in the light most favorable to the plaintiff and accept those allegations as true. *See Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Dacey v. New York County Lawyers' Assoc.,* 423 F.2d 188, 191 (2d Cir.1969), *cert. denied,* 398 U.S. 929, 90 S.Ct. 1819, 26 L.Ed.2d 92 (1970).

*Fraud*

The complaint's fifth cause of action charges the Defendants with fraud. It identifies two allegedly false representations: 1) the Defendants "represented to the plaintiff, through the filing of weekly reports as required by the contract, that they had sold airline tickets in a certain dollar amount" that fell below the actual amount collected (Complaint ¶ 32) and 2) the Defendants "represented to the plaintiff, through the completion and issuance

of airline tickets, that they had sold airline tickets for cash or on valid credit card accounts and that they intended to remit the proceeds of those sales to the plaintiff" (Complaint ¶ 33). ARC seeks $75,3334 in compensatory damages and $500,000 in punitive damages for the purported fraud.

■ ARC has failed to plead a cause of action for fraud. The contract required the Defendants to report airline ticket sales and remit payment weekly, and the alleged fraudulent representations amount to no more than a claim that the Defendants failed to perform these contractual obligations. New York courts have held that "a cause of action for fraud will not arise when the only fraud charged relates to a breach of contract." *Trusthouse Forte (Garden City) Mgt., Inc. v. Garden City Hotel, Inc.,* 106 A.D.2d 271, 483 N.Y.S.2d 216, 218 (1st Dep't 1984); *see also Scally v. Simcona Elec. Corp.,* 135 A.D.2d 1086, 523 N.Y.S.2d 307, 308 (4th Dep't 1987) (absent duty between parties separate and distinct from contract, alleged breach does not give rise to claim of fraud); *Freyne v. Xerox Corp.,* 98 A.D.2d 965, 470 N.Y.S.2d 187, 188 (4th Dep't 1983) (because "alleged fraudulent representations are, in essence, restatements of plaintiff's contract cause of action [they] do not state separate causes of action in fraud"); *Regnell v. Page,* 54 A.D.2d 540, 387 N.Y.S.2d 253 (1st Dep't 1976) ("[t]he fraudulent breach of contract does not give rise to an action for fraud"); *Cranston Print Works Co. v. Brockmann Int'l A.G.,* 521 F.Supp. 609, 614 (S.D.N.Y.1981) (a claim for fraud "cannot be based solely upon the failure to perform the promises of future acts which constitute the contractual obligations themselves").

■ The fraud claim also is dismissed for failure to plead fraud with particularity. Rule 9(b) provides: "In all averments of fraud ..., the circumstances constituting fraud ... shall be stated with particularity." This requirement serves several purposes:

The first is to "protect potential defendants from the harm that comes to their reputations when they are charged with the commission of acts involving moral turpitude." *Gross v. Diversified Mortgage Investors,* 431 F.Supp. 1080, 1087 (S.D.N.Y.1977). Second, Rule 9(b) serves to ensure that the allegations of fraud are concrete and particularized enough to give notice to the defendants of "what conduct is complained of and to prepare a defense to such claim of misconduct." *Rich v. Touche Ross & Co.,* 68 F.R.D. 243, 245 (S.D.N.Y.1975). Finally, ... Rule 9(b) is intended to "inhibit the filing of a complaint as a pretext for discovery of unknown wrongs." [*Gross,* 431 F.Supp. at 1087].

*Goldman v. Belden,* 98 F.R.D. 733, 735–36 (S.D.N.Y.1983).

Paragraphs 32 and 33—which describe the purported false representations—are quoted above. The complaint alleges the remaining elements of a fraud cause of action as follows:

34. That the defendants knew or should have known that the aforementioned representations were false.

35. That the defendants made the aforementioned representations with the intention of deceiving and defrauding the plaintiff and of depriving the plaintiff of monies properly due and owing to it.

36. That the plaintiff was ignorant of the falsity of the aforementioned representations and believed them to be true.

37. That the plaintiff relied upon the aforementioned representations of the defendant to its detriment.

38. That as a direct and proximate result of the aforementioned misrepresentations of the defendants, the plaintiff suffered damages in the amount of $75,334.95.

These allegations represent nothing more than a recitation of the essential elements of a fraud cause of action and therefore lack the degree of particularity Rule 9(b) requires.

### RICO Violations

■ In its fourth cause of action, ARC charges the Defendants with violating RICO, stating:

In furtherance of the scheme and artifice to defraud the plaintiff, the defendants knowingly used and caused to be used the mail facilities of the United States Postal Service, all as proscribed and prohibited by 18 U.S.C. § 1341 (relating to mail fraud). During the months of November 1986 through December 1987, the defendants sold a quantity of airline tickets to the public and received cash or other valuable consideration in return. Defendants failed to account to the plaintiff for the monies and other valuable consideration received in return for the airline tickets, and instead filed and transmitted by United States Mail, false and misleading reports of the monies and valuable consideration actually received. Defendants omitted sales of airline tickets from their reports to the plaintiff; said omissions constitute a pattern of racketeering activity. Defendants employed the United States Mails for the purpose of representing to the plaintiff that they had sold airline tickets for cash or on valid credit card accounts and that they intended to remit the proceeds of those sales to the plaintiff. In addition, they employed the United States Mails for the purpose of representing that they had preserved the plaintiff's monies derived from those sales in a bank account from which plaintiff could draws [sic] them. The defendants did not remit the proceeds of those sales and/or did not receive cash or valid credit card charges in exchange for those airline tickets as completed or issued by them, nor did they maintain the plaintiff's monies in said bank account, and the plaintiff was accordingly deprived of its rightful monies through this pattern of racketeering activity.

Complaint ¶ 27.

To state a claim under RICO, a complaint must allege:

(1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, or maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate commerce.

*Moss v. Morgan Stanley, Inc.*, 719 F.2d 5, 17 (2d Cir.1983), *cert. denied*, 465 U.S. 1025, 104 S.Ct. 1280, 79 L.Ed.2d 684 (1984). Because the Defendants' conduct did not involve sufficient continuity or threat of continuity to constitute a "pattern," the RICO claim is dismissed.

A "pattern" under RICO "requires at least two acts of racketeering activity" within a ten-year period. 18 U.S.C. § 1961(5) (1982 ed., Supp. V). Recently, the Supreme Court elaborated upon this definition, stating:

> In our view, Congress had a more natural and common-sense approach to RICO's pattern element in mind, intending a more stringent requirement than proof simply of two predicates, but also envisioning a concept of sufficient breadth that it might encompass multiple predicates within a single scheme that were related and that amounted to, or threatened the continued likelihood of, continued criminal activity.

*H.J. Inc.*, 109 S.Ct. at 2899.

Adopting a provision from the Dangerous Special Offender Sentencing Act, 18 U.S.C. § 3575 *et seq.*, the Court defined "relatedness" as " 'criminal acts that have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events.' " *Id.* at 2901 (quoting 18 U.S.C. § 3575(d)).

The Court recognized that the "continuity" concept is somewhat more difficult to define, noting that "[w]hether the predicates proved establish a threat of continued racketeering activity depends upon the specific facts of each case." *Id.* at 2902. For guidance, the Court stated:

> "Continuity" is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repitition.... A party alleging a RICO violation may demonstrate continuity over a closed period by proving a series of related predicates extending over a substan-

tial period of time. Predicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement.... [L]iability depends on whether the *threat* of continuity is demonstrated.

*Id.* (emphasis in original) (citations omitted). As an alternative to considering the number, frequency, and duration of criminal acts for assessing the threat of continuity, a court can ask whether the criminal acts "are a regular way of conducting defendant's ongoing legitimate business." *Id.*

ARC has alleged a pattern of racketeering activity consisting of the Defendants' mailing ATCA allegedly fraudulent weekly reports from November 1986 through December 1987. At issue here is whether the alleged racketeering acts were "isolated and sporadic" or demonstrated a "threat of continuity."

In *H.J. Inc.*, the Supreme Court declined to offer a firm definition of continuity, noting that the concept required an inquiry into the facts of each particular case. Several courts since *H.J. Inc.* have wrestled with the Supreme Court's case-by-case approach to defining continuity for a closed-ended scheme. A review of these cases reveals that there is insufficient threat of continuity to support a RICO cause of action where the racketeering acts involved a brief period of time, *see, e.g., West Mountain Sales, Inc. v. Logan Mfg. Co.*, 718 F.Supp. 1084 (N.D.N.Y.1989) (less than four months); *Service Eng'g Co. v. Southwest Marine, Inc.*, 719 F.Supp. 1500 (N.D. Cal.1989) (a few weeks or months); *Adnan Int'l Mktg., Inc. v. Hamilton Bank*, 1989 WL 89245 (E.D.Pa.1989) (less than three months), relatively few criminal acts, *see, e.g., Service Eng'g Co.*, 719 F.Supp. 1500 ("[s]ubmission of the false Form 355 ... and the few misleading letters and proposal"); *Adnan Int'l Mktg., Inc.*, 1989 WL at 89245 (three), an uncomplicated scheme, *cf. Atlas Pile Driving Co. v. DiCon Financial Co.*, 886 F.2d 986 (8th Cir.1989) (finding a threat of continuity where "[t]he conduct involved a complex series of activities indicating continuity, such as the numerous corporate entities created by Anderson and Conry and the working and financing arrangements employed"), few participants, *see, e.g., Peterson v. Philadelphia Stock Exchange*, 717 F.Supp. 332 (E.D.Pa.1989) (two); *Adnan Int'l Mktg., Inc.*, 1989 WL at 89245 (six), and few victims, *see, e.g., Peterson*, 717 F.Supp. at 332 (one); *Adnan Int'l Mktg., Inc.*, 1989 WL at 89245 (one); *Thacker Eng'g, Inc. v. Chicago Housing Auth.*, 1989 WL 84561 (N.D.Ill.1989) (one).

Circuits that had applied a fact specific analysis of RICO's pattern requirement even before the Supreme Court decided *H.J. Inc.* had identified similar factors for assessing the threat of continuity. For example, the Seventh Circuit considered a range of factors, including " '(1) the number and variety of predicate acts and the length of time over which they were committed; (2) the number of victims; (3) the presence of separate schemes; and (4) the occurrence of distinct injuries.' " *Brandt v. Schal Assocs., Inc.*, 854 F.2d 948, 952 (7th Cir.1988) (quoting *Jones v. Lampe*, 845 F.2d 755, 757 (7th Cir.1988)). Similarly, the Third Circuit looked to such factors as "the number of unlawful acts, the length of time over which the acts were committed, the similarity of the acts, the number of victims, the number of perpetrators, and the character of the unlawful activity." *Barticheck v. Fidelity Union Bank/First Nat'l State*, 832 F.2d 36, 39 (3d Cir.1987).

Here, ARC has failed to plead facts indicating that the Defendants' conduct presented a threat of continuity sufficient to establish a pattern of racketeering activity. The complaint alleges a closed-ended, single scheme involving three perpetrators (a company and two of its directors), one victim, and an uncomplicated transaction (essentially relating to a simple breach of contract). Although the defendants allegedly committed some fifty racketeering acts of mail fraud, those acts were identical to one another. Moreover, courts have recognized that "the raw number of predicate acts has never been determinative, especially when only mail and wire fraud are alleged." *Ashland Oil, Inc. v. Arnett*, 875 F.2d 1271, 1278 (7th Cir.1989); *accord Nortman v. Itex Energy Corp.*, 1989 WL

81921 (N.D.Ill.1989) ("The fact that several acts of mail and wire fraud have been alleged is, without more, of little significance."). Finally, these acts occurred over only thirteen months, far less than the six-year period at issue in *H.J. Inc.*, which noted that Congress enacted RICO to address "long-term criminal conduct" and that criminal conduct "extending over a few weeks or months" does not meet this requirement. 109 S.Ct. at 2902.

### Negligence

■ The complaint's sixth cause of action alleges negligence. According to ARC, Singh and Sharma "as officers and directors of [Aero] owed a duty to the corporation's creditors, including the plaintiff, to protect its assets by supervising the actions of its officers and employees, and by keeping abreast of its financial condition." Complaint ¶ 40. ARC further alleges that Singh and Sharma "breached the aforementioned duty by failing to supervise the actions of the corporation's employees in charge of its day-to-day operations, by failing to learn of the consistent pattern of defalcations which said employees were committing with respect to the plaintiff." Complaint ¶ 41.

Under New York law, an officer or director is not personally liable to third persons "for an act of nonfeasance pertaining to the duties owed to the corporation." 15 N.Y.Jur.2d, *Business Relationships*, § 1086, at 358 (1981); *Michaels v. Lispenard Holding Corp.*, 11 A.D.2d 12, 201 N.Y.S.2d 611 (1st Dep't 1960). As one court has noted:

> A corporate officer is not held liable for the negligence of the corporation merely because of his official relationship to it. It must be shown that the officer was a participant in the wrongful conduct.

*Clark v. Pine Hill Homes, Inc.*, 112 A.D.2d 755, 492 N.Y.S.2d 253, 254 (4th Dep't 1985) (citations omitted).

Essentially, ARC's negligence cause of action alleges that ATCA suffered harm because Singh and Sharma failed to super vise Aero's employees properly, not because Singh and Sharma themselves partic-

ipated in the misconduct. However, failure to perform a duty owed to the corporation —*i.e.*, to supervise the employees—does not make corporate officers or directors personally liable to third parties. Accordingly, the cause of action against Singh and Sharma for negligence is dismissed.

### Punitive Damages

■ The Defendants also have moved to dismiss the claims for punitive damages set forth in the breach of fiduciary duty and conversion causes of action. The former alleges that the Defendants breached their fiduciary duty by misappropriating airline monies and credit card billings that the contract required them to hold in trust for ATCA. The latter asserts that the Defendants converted to their own use funds belonging to ATCA, and that "the actions of the defendants in converting the aforementioned airline tickets and monies were wilful, wanton, and malicious, and were undertaken with the express intention of depriving and defrauding the plaintiff out of its rightful property and monies." Complaint ¶ 22.

In moving to dismiss the punitive damages claims, the Defendants have characterized the breach of fiduciary duty and conversion causes of action as essentially breach of contract claims. They then have invoked the general rule under New York law that a plaintiff cannot recover punitive damages in a breach of contract action absent "fraud 'aimed at the public generally,' evincing a 'high degree of moral turpitude,' and demonstrating 'such wanton dishonesty as to imply a criminal indifference to civil obligations.'" *Durham Indus., Inc. v. North River Ins. Co.*, 673 F.2d 37, 41 (2d Cir.) (citations omitted), *cert. denied*, 459 U.S. 827, 103 S.Ct. 61, 74 L.Ed.2d 64 (1982); *accord Fort Howard Paper Co. v. William D. Witter, Inc.*, 787 F.2d 784, 793 (2d Cir.1986). Curiously, ARC has responded by accepting the Defendants' characterization, then arguing that the complaint alleges facts establishing that the purported breach of contract was "aimed at the public generally" and involved a "high de-

gree of moral turpitude" and "criminal indifference." ARC Mem. at 12–14.

■ In fact, ARC capitulated too easily. Although the breach of fiduciary duty claim relates to a breach of contract, New York law recognizes a breach of fiduciary duty as an exception to the general rule against punitive damages for breach of contract. *See Thyssen, Inc. v. S.S. Fortune Star*, 777 F.2d 57, 63 (2d Cir.1985); *see also* Sullivan, *Punitive Damages in the Law of Contract: The Reality and the Illusion of Legal Change*, 61 Minn.L.Rev. 207, 226–29 (1977) ("A number of courts have awarded punitive damages in actions involving breach of contract when the relationship between the parties is of a fiduciary character. In these cases, ... it is the breach of duty created by the relationship rather than the contract which is said to permit the recovery of punitive damages."). Accordingly, ARC's complaint has stated a claim for punitive damages for breach of fiduciary duty.

Moreover, conversion is a tort claim, not a contract claim. Under New York law, punitive damages "may be recovered for an act of conversion where the circumstances establish that the conversion was accomplished by malice or reckless or willful disregard of the plaintiff's right." *Ashare v. Mirkin, Barre, Saltzstein & Gordon, P.C.*, 106 Misc.2d 866, 435 N.Y.S.2d 438, 441 (N.Y.Sup.Ct.1980), *aff'd*, 81 A.D.2d 650, 441 N.Y.S.2d 408 (2d Dep't), *aff'd*, 54 N.Y.2d 891, 429 N.E.2d 425, 444 N.Y.S.2d 918 (1981); *accord* 23 N.Y.Jur.2d *Conversion* § 74, at 308–09 (1982) (same). Because the complaint has alleged these circumstances, it has stated a claim for punitive damages.

### B. Rule 11 Sanctions

■ The Defendants have moved for sanctions pursuant to Rule 11, Fed.R.Civ.P. Rule 11 provides:

The signature of an attorney or party constitutes a certificate by the signer that the signer has read the pleading, motion, or other paper; that to the best of the signer's knowledge, information and belief formed after reasonable inquiry it is well grounded in fact and is warranted by existing law or a good faith argument for the extension, modification or reversal of existing law, and that it is not interposed for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation.

Fed.R.Civ.P. 11. In applying Rule 11, courts must assess whether an attorney's conduct was objectively reasonable as of the time he or she signed the pleading, motion, or other paper. *See Calloway v. Marvel Entertainment Group*, 854 F.2d 1452, 1469–70 (2d Cir.1988), *cert. granted*, —— U.S. ——, 109 S.Ct. 1116, 103 L.Ed.2d 179 (1989); *Eastway Constr. Corp. v. City of New York*, 762 F.2d 243, 253–54 (2d Cir.1985), *cert. denied*, 484 U.S. 918, 108 S.Ct. 269, 98 L.Ed.2d 226 (1987); *Oliveri v. Thompson*, 803 F.2d 1265, 1274–75 (2d Cir. 1986), *cert. denied*, 480 U.S. 918, 107 S.Ct. 1373, 94 L.Ed.2d 689 (1987). Courts should resolve all doubts and draw all inferences in favor of the signer. *See Eastway*, 762 F.2d at 254; *Riis v. Manufacturers Hanover Trust Co.*, 632 F.Supp. 1098, 1106 (S.D. N.Y.1986). Where a court finds a Rule 11 violation, sanctions are mandatory. *See Eastway*, 762 F.2d at 254 n. 7.

■ Rule 11 sanctions are inappropriate here. As noted above, ARC has stated claims for punitive damages. Although this opinion has dismissed the complaint's fraud, RICO, and negligence causes of action, pleading those claims in the complaint was not objectively unreasonable. Rule 11 requires more than a finding that a plaintiff asserted claims that a court later dismissed.

### Conclusion

For the reasons set forth above, the motion to dismiss is granted in part and the motion for Rule 11 sanctions is denied. Settle judgment on notice.

It is so ordered.