[Civ. No. 4318.   Fourth Dist.   May 21, 1951.]

A. S. PILIBOS et al., Respondents, v. MIKE D. GRAMAS et al., Appellants.

Linneman, Burgess, Telles & Van Atta for Appellants.

Milo E. Rowell, Richard Z. Lamberson, Breckinridge Thomas and Rowell, Lamberson & Thomas for Respondents.

BARNARD, P. J.,—This action involves a boundary line between two sections of land on the "West Side" of Fresno County. The plaintiffs are the owners of the Northwest Quarter of Section 11, Township 15 South, Range 13 East, M. D. B. & M., and the defendants are the owners of Section 2, which adjoins Section 11 on the north.

Section 2 formerly belonged to a farming corporation. Late in 1945, an employee of that corporation was sent to locate a site for a deep well and pump near the southwest corner of Section 2. By mistake, he picked a location which was in fact upon the Northwest Quarter of Section 11, and about 57 feet south of the true boundary between the sections. A deep well was drilled at that point and a pumping plant installed in December, 1945. Later, a concrete pipe line was installed which was also upon Section 11. The cost of these

improvements was about $22,000. The farming corporation leased Section 2 to one Montgomery for the year 1946. From August, 1947, to November 22, 1948, the defendants leased the property. On the latter date they received a deed from the farming corporation conveying to them "Section 2, Township 15 South, Range 13 East, as per United States Government Plats." Prior thereto and on January 12, 1948, a civil engineer employed by the farming corporation had surveyed Section 2, finding monuments placed in the official survey, and disclosing that the well, pump and pipe line were located on the Northwest Quarter of Section 11. In October, 1948, before they received a deed, and again in March, 1949, the defendants tried to buy from the plaintiffs the strip of land on which the well and pipe line are located. The plaintiffs refused to sell, and ordered the defendants to stay off the property.

This action was brought on May 2, 1949, to restrain any trespass upon the Northwest Quarter of Section 11, to restrain the use of this well or the removal of the pumping equipment, and for damages for water taken from the well. The defendants filed a cross-complaint seeking to quiet their title to Section 2, including the strip of land upon which the well and pump are located. To this end they alleged that the south boundary of Section 2 began at a point 5542.10 feet south of the northwest corner of Section 2, and extended due east.

The court found that the plaintiffs are the owners of the Northwest Quarter of Section 11, and the defendants are the owners of Section 2, both in accordance with the United States Government plat; that the southwest corner of Section 2 and the northwest corner of Section 11 is in accordance with the United States Government plats and is located on the west line of Section 2 at a point 5292.15 feet south of an established monument marking the northwest corner of Section 2; that the common boundary line between the two sections commences at that point and runs due east; that the well, pump and pipe line in question are upon the Northwest Quarter of Section 11; and that the parties to this action and their respective predecessors have never at any time agreed or intended to agree, impliedly or expressly, upon a boundary line between these properties, other than the true boundary line as shown by the United States Government plats and as fixed by the court. Other findings were made with respect to damage for water taken.

A judgment was entered decreeing that the plaintiffs are

the owners of the Northwest Quarter of Section 11, and the defendants the owners of Section 2, both in accordance with the United States Government plat; establishing the common boundary between Section 2 and Section 11 in accordance with the finding; enjoining the defendants from using said well, pump and pipe line, from removing same, or from further trespassing upon the plaintiffs' property; and awarding the plaintiffs damages in the sum of $6,708. The defendants have appealed from the judgment.

The appellants first contend that under the doctrine of agreed boundaries it must be held, as a matter of law, that they are the owners of the disputed strip of land with the improvements thereon. They rely upon the established rules with respect to an agreed boundary as set forth in *Roberts* v. *Brae*, 5 Cal.2d 356 [54 P.2d 698]; *Vowinckel* v. *Clark & Sons*, 217 Cal. 258 [18 P.2d 58]; *Hannah* v. *Pogue*, 23 Cal.2d 849 [147 P.2d 572]; *Mello* v. *Weaver*, 36 Cal.2d 456 [224 P. 2d 691]; *Young* v. *Blakeman*, 153 Cal. 477 [95 P. 888] and *Silva* v. *Azevedo*, 178 Cal. 495 [173 P. 929]. They argue that posts were here found purporting to mark the south corners of Section 2 at a point considerably south of the boundaries as found by the court; that there was a road between these purported section posts; that the evidence thus shows the establishment of a line upon the ground; that the appellants and their predecessors occupied Section 2 up to the line thus established for several years; that during such time the owners of Section 11 made no objection; and that since the appellants had made extensive improvements on the land it was not necessary that the period of acquiescence be equal to that required by the statute of limitations.

In order to establish an agreed boundary line under the rules set forth in the cases cited, and many others, there must at least be an implied agreement fixing the line, an actual designation of the line on the ground and an occupation in accordance therewith, and a mutual acceptance of this as the common boundary for such a length of time that neither party ought to be allowed to deny its correctness. While a few of the cases have recognized that the erection of substantial improvements, in reliance upon the mutual agreement, is an element to be considered under some circumstances, it could not be controlling in the absence of the necessary agreement.

It appears from the evidence that late in 1945 an employee of the farming corporation was sent out to locate

a site for a well near the southwest corner of Section 2. At that time this was all virgin pasture land which had never been farmed, although there was beginning to be some farming a mile or two away. This employee testified that he looked at no maps and made no measurements; that he found a 4 x 4 post and an iron pipe, with a flag in it, standing together; that he thought this marked the southwest corner of Section 2 and did not look at any other corners of that section; that there was a road running easterly from where he found these markers; and that Montgomery helped him locate the corner. When asked if this was a well-defined roadway he replied, "Well, they traveled on it." Montgomery testified that he did not look for stakes at other corners; that he farmed Section 2 in 1946; that he just plowed a mile each way and kept it in line with the southwest corner; that he drove his car around "as near as I could on the section line"; that Section 11 was not being farmed; that "There was nothing west of there, or south, being farmed at all"; and that the stake he thought was the corner washed out and he "never marked it again." When asked if there was a road at the point they picked he replied: "Well, I would not call it a road, I'd call it a sheep trail near where we were."

There was evidence that the 4 x 4 post, thus assumed to mark the southwest corner of Section 2, was a remnant of an old sheep corral. Also that the iron pipe with a flag in it was exactly similar to many others, around that part of the country, which had been placed by sheepherders for the purpose of marking the extent of land they had rented for sheep grazing. There is evidence that the Northwest Quarter of Section 11 was never farmed until 1949, when it was farmed by a tenant of the owners; and that its owners were not present during the time the well was being installed. There is no evidence that the respondents or their predecessors knew that the well had been installed, or that Section 2 was being farmed, until sometime in October, 1948. The respondents then objected and continued to object, this action being filed on May 2, 1949. While it is not controlling, the evidence shows that a large number of markers, placed by official surveyors and giving a true basis for starting points, existed within a mile or two of the lands in question.

No agreement for this boundary, either express or implied, and no laying out of the line by common consent appears. The evidence is entirely insufficient to show the required ac-

quiescence. The court's findings against an agreed boundary are fully supported by the evidence.

It is next contended that the award of damages is supported neither by the evidence nor by the law. In their original complaint and in a supplemental complaint filed on January 13, 1950, the respondents alleged that continuously since October 23, 1948, the appellants had taken water from this well; that the reasonable value of said water, so taken, is the sum of $2,160; and that the respondents were damaged in that amount. In this connection, the court found that the appellants had continuously taken water from this well between October 23, 1948, and May 1, 1950; that the reasonable value of the water so taken is $6,708, being $12 per day from October 23, 1948; and that the respondents have been thereby damaged in the sum of $6,708.

The only evidence in this connection is the testimony of one of the respondents. He testified that he was familiar with the reasonable value of water pumped from a well in that area with a similar well installation; that this value would vary during different times, depending on whether irrigation was needed; that for the period from October 28 to April 30, he would say the value of water taken was "about $12.00 for 24 hours"; and that he had purchased water on that basis and considered it reasonable. The award exceeds the amount prayed for, and there is no evidence as to the amount of water taken or as to the number of days the pump was operated. In any event, the full value of the water was not the proper measure of damage, and the cost of producing the water was a necessary element to be considered. (*Union Oil Co.* v. *Mutual Oil Co.*, 19 Cal.App.2d 409 [65 P.2d 896]; *Little* v. *Mountain View Dairies*, 35 Cal.2d 232 [217 P.2d 416].) Moreover, in this equitable action the value of the improvements received by the respondents, as a result of a mistake and an unintentional trespass, was an element that should have been considered. The evidence does not sustain the award of damage here made.

That part of the judgment awarding the respondents damages in the sum of $6,708 is reversed. All other portions of the judgment are affirmed. Each party to pay his own costs.

Griffin, J., and Mussell, J., concurred.

A petition for a rehearing was denied June 15, 1951, and respondents' petition for a hearing by the Supreme Court was denied July 19, 1951.