[No. B002968. Second Dist., Div. One. Oct. 31, 1984.]

SANTA CLARITA WATER COMPANY,
Plaintiff, Cross-defendant and Appellant, v.
CHARLES J. LYONS, JR., et al.,
Defendants, Cross-complainants and Respondents.

**COUNSEL**

Knapp, Grossman & Marsh and Thomas A. Doran for Plaintiff, Cross-defendant and Appellant.

Selvin & Weiner, Paul P. Selvin and James S. Tyre for Defendants, Cross-complainants and Respondents.

**OPINION**

**HANSON (Thaxton), J.**—By first amended complaint, plaintiff Santa Clarita Water Company, a corporation (hereafter SCWC), sought to condemn a 10-foot strip of real property, approximately 1,000 feet long, owned by defendants Charles J. Lyons, Jr. and Mary Lou Lyons (hereafter Lyons).

Other defendants were named in the condemnation suit, but the claims and cross-claims of those individuals have been resolved during the course of this litigation, and are not before the court on this appeal. Lyons answered the complaint, and cross-complained for damages due to trespass and conversion.

Trial of the cause was bifurcated, but the legal and factual issues were decided by the trial court, sitting without a jury. In the first phase, the trial court decided seven legal issues. Having determined that cross-complainant Lyons was entitled to damages of various kinds, the valuation proceedings commenced. The trial court awarded Lyons $72,729 for the condemned strip and the improvements thereon, as well as $58,890 for the value of future water removal by plaintiff, and interest on these sums, including $45,512.41 on the condemnation award of $72,729. Legal fees and costs of $38,176 were awarded Lyons. In addition, Lyons was awarded $146,501 in compensatory damages on his cross-complaint. At this point plaintiff chose to exercise its right to abandon the condemnation action (Code Civ. Proc., § 1268.510), and the award of $72,729 and $58,890 was dismissed. There is no dispute between the parties concerning the legal fees and costs awarded in the remaining portion of the judgment. What is in issue between the parties is the interest of $45,512.41 and the damages for trespass of $146,501. Plaintiff has taken a timely appeal from the judgment (as modified after the abandonment). As we shall explain, we affirm the award of $146,501 and reverse the award of $45,512.41.

FACTUAL BACKGROUND

Most of the factual material presented here is uncontroverted, and stipulated to by the parties at trial. Plaintiff SCWC is a public utility water company, providing water to customers in the Saugus-Newhall area of Los Angeles County. In 1965, SCWC sought a five-foot easement over a portion of real property belonging to Lyons, and sent a draft of the requisite document to Lyons. Lyons never executed or returned the document to SCWC, and never in any manner consented to use of his land by SCWC.

Despite this fact, SCWC had, by 1967, installed a 14-inch subsurface pipeline on Lyons' property, and in 1973 constructed a water well on the property known as the "Delight Street Well." The well removed subsurface water flowing under the Lyons property from the Santa Clarita River Basin. SCWC not only did not have any permission from Lyons for the construction, operation and maintenance of these improvements, or for the taking of water from the well, it had not applied to the State Water Resources Board for any license or permit for these activities, as is required by the California Water Code section 1200 et seq. Lyons, who did not live on the

property, had no knowledge of this matter prior to 1975; when Lyons learned of it, a protest was immediately made to SCWC.

Plaintiff SCWC then sought to condemn an easement on the subject property ". . . in, on, over, under, through and across (the strip it had already appropriated) for the purpose of constructing, maintaining, reconstructing, using and operating water wells, pipelines, necessary appurtenances and other public utility purposes." (The claim was also made that SCWC had acquired an easement on the property by adverse possession.) As indicated, Lyons filed a cross-complaint for trespass and conversion damages.

## The Trial Court's Legal Determinations

After the first phase of this litigation, the trial court made the following determinations: It found that SCWC was a "negligent trespasser," and that it had not acquired any prescriptive rights by reason of its occupancy of Lyons' land. The court ruled that SCWC was liable for both the surface and subsurface trespass. It further determined that Lyons was entitled to compensation for the value of the property with the improvements thereon, the latter to be measured by the reproductive costs of the improvements. It also reasoned that since SCWC had failed to comply with the Water Code, *supra,* it had no right to remove water from the well, and was liable to Lyons for the water it had removed from the well to time of trial, and would be liable for water it removed in the future.

The valuation trial, involving the measurement of damages, commenced in 1982. Most of the testimony was in the form of expert testimony concerning the value of the land and improvements to be condemned and, most importantly, the value of the 4,636.3 acre-feet of water SCWC had removed from the well from 1973 through 1981. (We are advised that an acre-foot of water is the amount of water required to cover one acre of land with one foot of water. Thus, 4,636.3 acre-feet would cover a square mile of land with approximately 7.4 feet of water.)

Plaintiff SCWC has appealed to this court concerning two of the damages awards made, and our discussion follows.

## Standard of Review

The familiar and well-established principles of appellate review, i.e., that the judgment of the trial court is presumed to be correct and will be upheld if supported by substantial evidence, even when the record discloses that the evidence was conflicting, are applicable here. (See 6 Witkin,

Cal. Procedure (2d ed. 1971) § 245, p. 4236 et seq.) As the discussion in Witkin indicates, "substantial evidence" is that which produces confidence, is of solid value, and may be presented in various ways to the trial court, by lay or expert testimony, by one witness or twenty witnesses. These principles of review apply to damages awards. In *Bertero* v. *National General Corp.* (1974) 13 Cal.3d 43, 61 [118 Cal.Rptr. 184, 529 P.2d 608, 65 A.L.R.3d 878], it was said that "[a] reviewing court must uphold an award of damages whenever possible [citation] and all presumptions are in favor of the judgment. [Citations.]" We note, however, that while all presumptions favor the factual determinations involved in a damages award, *entitlement* to damages in the first instance is often purely a question of law, requiring that we determine the existence or absence of legal error.

DISCUSSION

I. *Interest on the Condemnation Award*

As stated, the trial court awarded Lyons $45,512.41 as interest on the condemnation award of $72,729, and the award of interest was retained in the judgment of condemnation after plaintiff abandoned the condemnation action.

██ On appeal, plaintiff SCWC contends that the interest award should not have survived its abandonment of the condemnation proceedings for a number of reasons, telling us that there was some question whether interest on an abandoned award does indeed survive such abandonment. Lyons argues that the award should stand because it actually constituted compensation "for eight years of SCWC's unlawful use of his property, separate and apart from its extraction of water."

In its statement of decision, the trial court awarded the interest pursuant to Code of Civil Procedure section 1268.310, which provides that: "The *compensation awarded* in the proceeding *shall draw* legal interest from the earliest of the following dates:

"(a) The date of entry of judgment.

"(b) The date the plaintiff takes possession of the property.

"(c) The date after which the plaintiff is authorized to take possession of the property as stated in an order for possession." (Italics added.)

Ordinarily, the proposition that a condemnation award draws interest would not engender much dispute in anyone's view, but here the plaintiff's action of abandonment must be considered.

Code of Civil Procedure section 1268.510 allows a condemner to abandon a condemnation. It provides: "(a) At any time after the filing of the complaint and before the expiration of 30 days after final judgment, the plaintiff may wholly or partially abandon the proceeding by serving on the defendant and filing in court a written notice of such abandonment. [¶] (b) The court may, upon motion made within 30 days after the filing of such notice, set the abandonment aside if it determines that the position of the moving party has been substantially changed to his detriment in justifiable reliance upon the proceeding and such party cannot be restored to substantially the same position as if the proceeding had not been commenced. [¶] (c) Upon denial of a motion to set aside such abandonment or, if no such motion is filed, upon the expiration of the time for filing such a motion, the court shall, on motion of any party, enter judgment wholly or partially dismissing the proceeding."

This section, formerly section 1255a, was reenacted in 1975 without substantial change. ■ In *City of Torrance* v. *Superior Court* (1976) 16 Cal.3d 195 [127 Cal.Rptr. 609, 545 P.2d 1313], the California Supreme Court emphasized that fairness required that the condemnee, when there was an abandonment by the condemner, be made whole if there had in fact been detrimental reliance on the condemnation proceedings during the time they were extant. ■ And, in *Klopping* v. *City of Whittier* (1972) 8 Cal.3d 39 [104 Cal.Rptr. 1, 500 P.2d 1345], the California Supreme Court had already adopted the position that damages could be awarded on occasion for "precondemnation" activity.

■ However, there is no statutory authority, insofar as we have discovered, for awarding interest on an award that has not been paid to the condemnee. ■ Civil Code section 3287, subdivision (a) provides for the payment of interest to "[e]very person who is entitled to recover damages certain . . . ." Analysis of the ruling of *Leff* v. *Gunter* (1983) 33 Cal.3d 508 [189 Cal.Rptr. 377, 658 P.2d 740], persuades us that the *sine qua non* of payment of *interest* is the *entitlement* to some underlying sum made payable by the judgment.

There is some case law on the liability of a condemner postabandonment. ■ For example, the legal fees and costs incurred by the condemnee survive abandonment (see *Glendora Community Redevelopment Agency* v. *Demeter* (1984) 155 Cal.App.3d 465 [202 Cal.Rptr. 389]); the parties to this appeal apparently recognized that fact and did not raise any issue here. We

have found no case allowing interest on the now nonexistent award. ▮ As stated in *People* ex rel. *Dept. Pub. Wks.* v. *Campus Crusade for Christ, Inc.* (1967) 255 Cal.App.2d 202, 204 [63 Cal.Rptr. 67], a decision denying interest to a condemnee after the abandonment of a condemnation action, "The right to interest springs from the judgment. [Citations.]"

▮ We agree. We decline to speculate that the interest awarded was in actuality an award for some other perceived loss. The judgment did not state that. In *County of Madera* v. *Forrester* (1981) 115 Cal.App.3d 57 [170 Cal.Rptr. 896], the condemnees' award of "rental damages" was upheld on appeal, but no interest was involved. It may be that the *Forrester* case is a precedent for awarding damages for land use up to the time of abandonment, but there is no indication, in the case at bench, that the trial court was making such an award. Therefore, we reverse that portion of the judgment in condemnation which awarded defendant Lyons $46,512.41.

## II. *Damages for Trespass*

▮ In its statement of decision, the trial court relied on Civil Code section 2224 in making a substantial damages award of $146,501 to cross-complainant Lyons, for trespass and the value of the water taken. That section provides: "One who gains a thing by fraud, accident, mistake, undue influence, the violation of a trust, or other wrongful act, is, unless he has some other and better right thereto, an involuntary trustee of the thing gained, for the benefit of the person who would otherwise have had it."

▮ This section has been applied to diverse factual situations where fairness and justice dictated recovery but the actionable facts did not fit into the more readily recognizable modes. The section essentially provides a remedy, to prevent unjust enrichment. ▮ In *Kraus* v. *Willow Park Public Golf Course* (1977) 73 Cal.App.3d 354, 373 [140 Cal.Rptr. 744], it was said that "[i]n order to create a constructive or involuntary trust as defined in section 2224, no conditions other than the three stated in that section are necessary: the existence of a res (property or some interest in property), the plaintiff's right to that res, and the defendant's gain of the res by fraud, accident, mistake, undue influence, the violation of a trust or other wrongful act. [Citations.] ▮ A constructive trust is a remedial device primarily created to prevent unjust enrichment; equity compels the restoration to another of property to which the holder thereof is not justly entitled. [Citation.]"

▮ The trial court reasoned that cross-defendant SCWC had committed a substantial trespass over a long period of time, and had taken water for which it charged its customers but for which it had not paid, and that a

remedy was available, in Civil Code section 2224, to cross-complainant. We hold that the trial court's application of this section to the facts presented was proper, and that there was no error.

A. *The Existence of a Res.* ■■■ "Water in its natural state is a part of the land, and therefore *real property*. When severed from the realty, reduced to possession and placed in containers, it becomes *personal property*. [Citations.]" So it is described in 3 Witkin, Summary of California Law (8th ed. 1973) section 53, page 1661; italics original. Within the context of this litigation, viewing water in this manner is sufficient.

We are mindful, however, that there is a body of water law with a distinctly different philosophical base than that governing ownership of personal property. ■■■ Water is not stationary, as are other natural deposits such as ore, and it may be replenished from its source unlike other natural deposits. As was explained in *National Audubon Society* v. *Superior Court* (1983) 33 Cal.3d 419, 441 [189 Cal.Rptr. 346, 658 P.2d 709], " 'It is laid down by our law writers, that the right of property in water is usufructuary, and consists not so much of the fluid itself as the advantage of its use.' [Citation.] Hence the cases do not speak of the ownership of water but only of the right to its use. [Citations.]" ■■■ Thus, the initial trespass by SCWC was to the land and also constituted an interference with the cross-complainant's usufructuary right, an unusual but recognizable interest in property.

B. *The Right to the Res.* The parties to this litigation agreed that cross-complainant Lyons was a riparian owner with respect to the water flowing under the subject property. California adopted early and has followed what is termed a dual system of water law, encompassing both the riparian doctrine and the appropriation doctrine. In *People* v. *Shirokow* (1980) 26 Cal.3d 301, 307 [162 Cal.Rptr. 30, 605 P.2d 859], it was observed that "[t]he riparian doctrine confers upon the owner of land contiguous to a watercourse the right to the reasonable and beneficial use of water on his land. [Fn. omitted.] The appropriation doctrine contemplates the diversion of water and applies to 'any taking of water for other than riparian or overlying uses.' [Citation.] Both riparian and appropriative rights are usufructuary only and confer no right of private ownership in the watercourse. [Citation.]"

Plaintiff cross-defendant devotes much legal argument to persuade us that in addition to being a negligent trespasser (a designation it does not seriously contest) SCWC was an appropriator of the water in question and entitled to the protection of some early legal doctrines, espoused in a series of old California Supreme Court cases, which would establish that SCWC had, if

not a superior right to the water taken, a right equal to cross-complainant Lyons' right.

The attempt fails. In reality, today all water use in this state is governed by California Constitution, article X, section 2, which expresses state water policy by declaring that *all* use of water in the state must conform to the standard of reasonable use. That policy is implemented by the Legislature through enactments contained in the California Water Code, and administered by the State Water Resources Control Board. The board and the courts, through the power of judicial review, determine present day disputes over water. (*National Audubon Society* v. *Superior Court, supra,* 33 Cal.3d 419; *In re Waters of Long Valley Creek Stream System* (1979) 25 Cal.3d 339 [158 Cal.Rptr. 350, 599 P.2d 656].) The cases just cited and the *Shirokow* decision make clear that private property rights in water fall before decisions made pursuant to the public trust doctrine, the doctrine dictating that water allocation benefit all of the people.

 One of the areas where the board has exclusive control is over appropriation of water. The modern procedure for establishing the right to take water is contained in the Water Code by a permit and license system (Wat. Code, § 1200 et seq.). Water Code section 1052 terms unauthorized diversion of water a "trespass" and Water Code section 1851 speaks of unspecified "equitable or legal relief" available to any person "for harm caused by an unauthorized diversion or a violation of a term or condition of a permit or license [issued under this code]."

Plaintiff cross-defendant concedes that it never applied for a permit or license from the board to take water from the subject property. Plaintiff is not an appropriator in the traditional use of that term, merely a negligent trespasser.

C. *Cross-defendant's Gain of the Res.* There can be no doubt that SCWC gained access to a watercourse through a negligent trespass. It can be said that where one trespasses upon the land of another, and removes something of value therefrom, a constructive trust may be imposed upon the proceeds of the trespass. Such a rule has been imposed in cases involving minerals (*Dolch* v. *Ramsey* (1943) 57 Cal.App.2d 99 [134 P.2d 19]; oil and gas (*Union Oil Co.* v. *Reconstruction Oil Co.* (1937) 20 Cal.App.2d 170 [66 P.2d 1215]; sand and gravel (*Farrington* v. *A. Teichert & Son* (1943) 59 Cal.App.2d 468 [139 P.2d 80], and water (*Pilibos* v. *Gramas* (1951) 104 Cal.App.2d 353 [231 P.2d 502] and *Wright* v. *County of Sonoma* (1909) 156 Cal. 475 [105 P. 409].)

During this litigation, research revealed an early Court of Appeal decision, *Pilibos* v. *Gramas, supra,* 104 Cal.App.2d 353, which was primarily

concerned with a boundary dispute but did involve a similar fact situation, i.e., defendant had placed a well on plaintiff's property. The trial court had awarded damages for water taken; the appellate court reversed, not because plaintiff was not entitled but because the damages had, in the view of that court, been improperly determined. As far as can be discovered, *Pilibos* has never been cited as authority for its collateral ruling on the taking of water. It has only minor relevance to the case at bench, because it was decided in a totally different context, as we shall explain.

III. *Valuation*

Evidence Code section 823 provides that "Notwithstanding any other provision of this article, the value of property for which there is no relevant market may be determined by any method of valuation that is just and equitable."

 Such was the situation here. It was established to the trial court's satisfaction that, at least for the years 1973 through 1980, there was no local relevant market for the water misappropriated by plaintiff SCWC. It also appears from the record that SCWC did not (and possibly could not) provide such relevant data as it possessed, in timely fashion, during the course of litigation.

Cross-complainant Lyons presented the expert testimony of Glenn A. Brown, a UCLA-trained engineer and geologist, who has specialized in matters concerning water, both in the public and private sectors of the economy. Brown had also had previous forensic experience. He testified to his method of arriving at the value of the water taken from 1973 to 1980; he consulted the State Water Master and studied data obtained concerning the value of wholesale water during the years in question. He reviewed information about three different water basins, and selected the basin that was, in his expert opinion, most similar to the area of the Delight Street Well. The basin he chose was the West Coast Basin, which extends south along the California coast from Santa Monica. He used a different method for determining the 1981 value, because of the commencement of operations by the Castaic Lake Water Agency which is located nearer to the area of the Delight Street Well. The trial court was persuaded, as are we after review of the record, that Brown presented as balanced a picture of the wholesale value of the water taken as was possible under all of the circumstances. Arguably, his figures were *lower* than some that might have been presented in the court below.

 Expert testimony may, of course, adequately support a damages award, even when it conflicts with other expert or lay testimony. It is the

function of the trier of fact to assess the credibility and expertise of a witness offered as an expert. The information needed by the court in the case at bench was highly technical in nature. An expert was also presented by plaintiff cross-defendant. As the statement of decision indicates, the trial court elected to accept the figures offered by Brown. We have reviewed the criticism of Brown's valuation method, and have concluded that his testimony did constitute substantial evidence in support of the award. We therefore uphold it.

 Plaintiff cross-defendant argues, on the basis of some language in *Pilibos* v. *Gramas, supra,* 104 Cal.App.2d 353, that it was entitled to a setoff for its costs in producing the water as supplied to its customers, and also for the well and pipeline it installed on cross-complainant's property. *Pilibos* was not decided in the context of a condemnation action, and the abandonment thereof.

With respect to the well, pipeline and other improvements, it does not appear to us either fair or just to give plaintiff credit for the value of these items when it chose to avoid paying for them by abandoning the condemnation action. With respect to the costs relative to the Delight Street Well, plaintiff had the burden to provide timely information about these costs during the litigation and failed to do so. Plaintiff cross-defendant significantly does not address as error the trial court's ruling limiting the testimony it could offer at trial concerning the reproductive costs. Plaintiff cross-defendant seeks, on this appeal, to utilize a reproductive cost figure supplied by expert Brown which was based on slightly different items in arriving at the computation. We decline to find error in the trial court's refusal to allow any setoffs.

### DISPOSITION

The judgment is reversed as to the award of $45,512.71. In all other respects, it is affirmed.

Spencer, P. J., and Dalsimer, J., concurred.

A petition for a rehearing was denied November 27, 1984.